## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARIAH PILATO, and ASHLEY MARTINEZ, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| BYHEART, INC., | |
| Defendant. | |

Plaintiffs, Mariah Pilato and Ashley Martinez (hereinafter "Plaintiffs"), individually and on behalf of all others similarly situated, by their attorneys, allege the following upon information and belief, except for those allegations pertaining to Plaintiffs, which are based on personal knowledge:

### NATURE OF THE ACTION

1.      This action seeks to remedy the deceptive and misleading business practices of ByHeart, Inc. (hereinafter "Defendant") with respect to the manufacturing, marketing, and sale of Defendant's ByHeart infant formula products throughout the United States (hereinafter the "Products").

2.      Defendant has improperly, deceptively, and misleadingly labeled and marketed its Products to reasonable consumers, like Plaintiffs, by omitting and not disclosing to consumers on its packaging that the Products are contaminated with *Clostridium botulinum,* also known as infant botulism.

3.      As described in further detail below, the Products contain *Clostridium botulinum* which could lead to serious and life-threatening adverse health consequences.  Per the

2

FDA:

> Infant botulism is a rare but potentially fatal illness that presents a serious threat to the health of infants which occurs when *Clostridium botulinum* spores are ingested and colonize the intestinal tract, producing botulinum neurotoxins in the immature gut of infants. Affected infants can present with some or all of the following signs and symptoms: constipation, poor feeding, ptosis (drooping eyelid), sluggish pupils, low muscle tone, difficulty sucking and swallowing, weak or altered cry, generalized weakness, respiratory difficulty, and possibly respiratory arrest.

4.      On November 8, 2025, preliminary test results reported by the California Department of Public Health confirmed the presence of *Clostridium botulinum* in a can of ByHeart infant formula that was fed to an infant with confirmed infant botulism.[1]

5.      Plaintiffs and those similarly situated (hereinafter "Class Members") certainly expect that the infant baby formula products they purchase will not contain, or risk containing, any knowingly harmful substances that cause severe disease and even be life threatening.

6.      Unfortunately for consumers, including Plaintiffs, the infant formulas Products they purchased contain *Clostridium botulinum*.

7.      Defendant is using a marketing and advertising campaign that omits from the packaging that the Products contain, or risk containing, *Clostridium botulinum*. Knowing of the presence of *Clostridium botulinum* is material to reasonable consumers. The presence of *Clostridium botulinum* was solely within the possession of Defendant, and consumers could only obtain such information by conducting by sending the products off to a laboratory for extensive testing. This omission leads a reasonable consumer to believe they are not purchasing a product with a known bacterium such as *Clostridium botulinum* when in fact they are purchasing a product that is indeed contaminated with the dangerous bacterium *Clostridium botulinum*.

---

[1] https://www.fda.gov/food/outbreaks-foodborne-illness/outbreak-investigation-infant-botulism-infant-formula-november-2025

8.    A representative example of Defendant's lack of disclosure on the Products is depicted below:



9.    Consumers like Plaintiffs trust manufacturers like Defendant to sell products that are safe and free from harmful known substances, including *Clostridium botulinum*.

10.    Plaintiffs and other Class Members certainly expect that the food products they purchase will not contain, or risk containing, any knowingly harmful substances that cause disease.

11.    Unfortunately for consumers, including Plaintiffs, the baby infant Products they purchased contained, or were at risk of containing, *Clostridium botulinum*.

12.    Defendant's own recall and other testing confirmed and demonstrated the presence of the dangerous bacterium *Clostridium botulinum* in the Plaintiffs' products.

**Defendant's Recall is Insufficient**

13.     Defendant issued a recall of certain lots of its Products on November 8, 2025,[2] followed by a complete Product recall on November 11, 2025.[3]

14.     The recall notice says:

> What Consumers Should Do: Consumers who have purchased ByHeart Whole Nutrition Infant Formula cans and Anywhere Pack™ should immediately discontinue use and dispose of the product.[4]

15.     Defendant's website states that: "At this moment, the most important thing for you to know is that all ByHeart product must be discarded."[5]

16.     However, there is no mention about a refund. A consumer looking for their refund options would need to dig into the recall FAQs to find ByHeart's guidance that: "If you purchased ByHeart through one of our retail partners or Amazon, please contact the retailer directly and they will assist you with your refund options."  In other words, Defendant designed its "recall" to shift responsibility onto retailers who did not manufacture, market, or distribute the tainted Product.

17.     Defendant is well aware that any consumer who was made aware of the recall would be predisposed to throwing the Products away, and Defendant leans into this predisposition by directing consumer to throw the Products away. Defendant is also aware that consumers shop in multiple locations and may or may not purchase the Products at the same location each time. Also, most consumers do not maintain receipts and therefore cannot obtain a refund at the purchase location for the recalled Products.

---

[2] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/response-broader-fda-investigation-byheart-initiates-voluntary-recall-two-batches-infant-formula
[3] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/byheart-broadens-voluntary-recall-while-investigation-continues
[4] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/byheart-broadens-voluntary-recall-while-investigation-continues
[5] https://byheart.com/

18.     Accordingly, Defendant's recall is designed to minimize Defendant's own liability, to reach very few people, and to benefit very few of the consumers who purchased the Products.

19.     The class action remedy is superior to Defendant's failed recall in every conceivable fashion.

20.     Defendant is using a marketing and advertising campaign that omits from the packaging that the Products contain *Clostridium botulinum*. This omission leads a reasonable consumer to believe they are not purchasing a product that contains foodborne illness of *Clostridium botulinum* when in fact they are purchasing a product contaminated with *Clostridium botulinum*.

*21.*     Defendant's marketing and advertising campaign includes the one place that every consumer looks when purchasing a product – the packaging and labels themselves. As such, a reasonable consumer reviewing Defendant's labels reasonably believes that they are purchasing products that are safe for oral ingestion and do not contain any harmful ingredients. Indeed, consumers expect the packaging and labels to accurately disclose the presence of such foodborne illness within the Products. Thus, reasonable consumers would not think that Defendant is omitting that the Products contain, or are at risk of containing, *Clostridium botulinum.*

22.     Defendant's advertising and marketing campaign is false, deceptive, and misleading because the Products do contain, or risk containing, *Clostridium botulinum*, which is dangerous to one's health and well-being. Nevertheless, Defendant does not list or mention *Clostridium botulinum* anywhere on the Products' packaging or labeling.

23.     Defendant's misrepresentations and omissions of the safety of the Products and what is in the Products was material to Plaintiffs and Class Members. Consequently, Plaintiffs and Class Members lost the entire benefit of their bargain when what they received was a food product

contaminated with *Clostridium botulinum* that is harmful to consumers' health.

24.    That is because Defendant's Products containing, or at risk of *Clostridium botulinum* have no value, or at the very least, Defendant was able to charge significantly more for the Products than they would have had they not omitted the fact that the Products contain—or possibly contain— *Clostridium botulinum*.

25.    As set forth below, Defendant's Products are in no way safe for human consumption and are entirely worthless.

26.    Alternatively, Plaintiffs and Class Members paid a price premium for the Products based upon Defendant's marketing and advertising campaign including its false and misleading representations and omission on the Products' labels.  Given that Plaintiffs and Class Members paid a premium for the Products, Plaintiffs and Class Members suffered an injury in the amount of the premium paid.

27.    Accordingly, Defendant's conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350; Florida's Deceptive and Unfair Trade Practices Act, Fla. Sta. §§ 501.201, *et seq.*; California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; California's False Advertising Act ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.* Defendant also breached and continues to breach its warranties regarding the Products.

28.    Plaintiffs bring this action against Defendant on behalf of themselves and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## FACTUAL BACKGROUND

29.    Defendant manufactures, markets, advertises, and sells food products.

30.     Consumers have become increasingly concerned about the effects of ingredients in products that they orally ingest. Companies, such as Defendant, have capitalized on consumers' desire for food products, and indeed, consumers are willing to pay, and have paid, a premium for these products.

31.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains unsafe substances, such as botulism, especially at the point of sale, and therefore must and do rely on Defendant to truthfully and honestly report what the Products contain or are at risk of containing on the Products' packaging or labels.

32.     The Products' packaging does not identify *Clostridium botulinum*. Indeed, *Clostridium botulinum* is not listed anywhere on the packaging, nor is there any warning about the inclusion (or even potential inclusion) of *Clostridium botulinum* in the Products. This leads reasonable consumers to believe the Products do not contain, and are not at risk of containing, *Clostridium botulinum*.

33.     However, the Products contain, or are at risk of containing, *Clostridium botulinum*.

34.     Defendant is a large and sophisticated corporation that has been in the business of producing, manufacturing, selling, and distributing food products for many years, including producing and manufacturing the contaminated Products.

35.     Defendant is in the unique and superior position of knowing the ingredients and raw materials used in the manufacturing of its Products and possesses unique and superior knowledge regarding the manufacturing process of the Products, the manufacturing process of the ingredients and raw materials the Products contain, and the risks associated with those processes, such as the risk of *Clostridium botulinum* contamination, as well as the ability to test the Products for *Clostridium botulinum* contamination prior to releasing the Products into the stream of

commerce. Such knowledge is solely within the possession of Defendant.

36.    For example, in August 2023, the FDA sent Defendant a warning letter that they were in violation of the FDCA because "FDA investigators found significant violations of Title 21, Code of Federal Regulations, Part 106 (21 C.F.R. Part 106), Infant Formula Requirements Pertaining to Current Good Manufacturing Practice, Quality Control Procedures, Quality Factors, Records and Reports, and Notifications ("the Infant Formula Rule")."[6]

37.    Accordingly, Defendant possesses superior knowledge regarding the risks involved in the production and manufacturing of its Products. Such knowledge is not readily available to consumers like Plaintiffs and Class Members.

38.    Defendant has a duty to provide consumers, like Plaintiffs and Class Members, with accurate information about the contents of the Products.

39.    Therefore, Defendant's false, misleading, and deceptive omissions regarding the Products containing *Clostridium botulinum* is likely to continue to deceive and mislead reasonable consumers, as they have already deceived and misled Plaintiffs and the Class Members.

40.    Defendant's misrepresentations and omissions were material and intentional because people are concerned with what is in the products that they orally ingest. Consumers such as Plaintiffs and the Class Members are influenced by the marketing and advertising campaign, the Products' labels, and the listed ingredients. Defendant knows that if they had not omitted that the Products contained *Clostridium botulinum*, then Plaintiffs and the Class would not have purchased the Products, or, at the very least, would not have paid nearly as much for the Products.

41.    Consumers rely on marketing and information in making purchasing decisions.

42.    By omitting that the Products include botulism on the labels of the Products

---

[6] https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/byheart-inc-653854-08302023

throughout the Class Period, Defendant knows that those omissions are material to consumers since they would not purchase a product that contained *Clostridium botulinum*.

43.    Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

44.    Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiffs and the Class Members.

45.    In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for a product marketed without *Clostridium botulinum* over comparable products not so marketed.

46.    As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representation and omission, Defendant injured Plaintiffs and the Class Members in that they:

    a.    Paid a sum of money for Products that were not as Defendant represented;

    b.    Paid a premium price for Products based on Defendant's false and misleading misrepresentations;

    c.    Were deprived of the benefit of the bargain because the Products they purchased was different from what Defendant warranted;

    d.    Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented; and

    e.    Were denied the benefit of the properties of the Products Defendant promised.

47.    Had Defendant not made the false, misleading, and deceptive representations and

omissions, Plaintiffs and the Class Members would not have been willing to pay the same amount for the Products they purchased and/or Plaintiffs and the Class Members would not have been willing to purchase the Products.

48.     Plaintiffs and the Class Members paid for Products that do not contain *Clostridium botulinum*. Since the Products do indeed or possibly contain *Clostridium botulinum*, the Products Plaintiffs and the Class Members received were worth less than the Products for which they paid.

49.     Plaintiffs and the Class Members all paid money for the Products; however, Plaintiffs and the Class Members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions. Plaintiffs and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products. Consequently, Plaintiffs and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

50.     Plaintiffs and Class Members saw the Products' packaging prior to purchasing the Products. Had Plaintiffs and Class Members known the truth about the Products, i.e., that they do or possibly contain infant botulism, they would not have been willing to purchase them at any price, or, at minimum would have paid less for them.

## JURISDICTION AND VENUE

51.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section §1332(d) in that (1) this is a class action involving more than 100 class members; (2) Plaintiffs are citizens of California and Florida, and Defendant ByHeart Inc. is a citizen of New York; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

52.     This Court has personal jurisdiction over Defendant because Defendant conducts

and transacts business in the state of New York, is headquartered in New York, New York, contracts to supply goods within the state of New York, and supplies goods within the state of New York.

53.    Venue is proper because Defendant ByHeart, Inc. is headquartered in New York, New York within the Southern District of New York. A substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

## PARTIES

### Plaintiffs

54.    Plaintiff Mariah Pilato is a citizen and resident of Los Angeles County, California. During the applicable statute of limitations period, Plaintiff Pilato purchased and used Defendant's Products that possibly contained, or had the risk of containing *Clostridium botulinum*. Most recently, Plaintiff purchased her Products from Amazon in October 2025.  Prior to purchasing the Product, Plaintiff Pilato saw the packaging of the Product.

55.    Had Defendant not made the false, misleading, and deceptive representations and omissions regarding the contents of the Products, Plaintiff Pilato would not have been willing to purchase the Products or pay as much for the Products. Plaintiff purchased, purchased more of, and/or paid more for, the Products than she would have had she known the truth about the Products.  The Products Plaintiff received were worthless because they possibly contained *Clostridium botulinum*. Alternatively, Plaintiff Pilato paid a price premium based on Defendant's false, misleading, and deceptive misrepresentations and omissions. Accordingly, Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

56.    Plaintiff Ashley Martinez is a citizen and resident of Belleview, Florida. During the applicable statute of limitations period, Plaintiff Martinez purchased and used Defendant's Products that possibly contained, or had the risk of containing *Clostridium botulinum*. Most

recently, Plaintiff purchased her Products from Walmart in Ocala, Florida in October 2025. Prior to purchasing the Product, Plaintiff Martinez saw the packaging of the Product.

57.    Had Defendant not made the false, misleading, and deceptive representations and omissions regarding the contents of the Products, Plaintiff Martinez would not have been willing to purchase the Products or pay as much for the Products. Plaintiff Martinez purchased, purchased more of, and/or paid more for, the Products than she would have had she known the truth about the Products. The Products Plaintiff received were worthless because they possibly contained *Clostridium botulinum*. Alternatively, Plaintiff Martinez paid a price premium based on Defendant's false, misleading, and deceptive misrepresentations and omissions. Accordingly, Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

**Defendant**

58.    Defendant, ByHeart, Inc. is a Delaware corporation with its headquarters and principal place of business in New York, New York.

59.    Defendant manufactures, markets, advertises, and distributes the Products throughout the United States. Defendant created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling of its Products.

## CLASS ALLEGATIONS

60.    Plaintiffs bring this matter on of themselves and those similarly situated. As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices. Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution.

61.    The Class is defined as all consumers who purchased the Products anywhere in the United States within the applicable statute of limitations.

62.    Plaintiffs also seek to represent a subclass of individuals who purchased any of the

Products in the state of New York within the applicable statute of limitations (the "New York Subclass").

63.     Plaintiff Martinez also seeks to represent a subclass of individuals who purchased any of the Products in the state of Florida within the applicable statute of limitations (the "Florida Subclass").

64.     Plaintiff Mariah Pilato seeks to represent a subclass of individuals who purchased any of the Products in the state of California within the applicable statute of limitations (the "California Subclass").

65.     The Class, New York Subclass, Florida Subclass, and California Subclass are referred to collectively throughout the Complaint as the Class.

66.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

67.     <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable. Plaintiffs believe that there are thousands of consumers in the Class and Subclasses who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices.

68.     <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

> a.     Whether Defendant was responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;
>
> b.     Whether Defendant's misconduct set forth in this Complaint demonstrates

that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

c.    Whether Defendant made false and/or misleading statements and omissions to the Class and the public concerning the contents of its Products;

d.    Whether Defendant's false and misleading statements and omissions concerning its Products were likely to deceive the public; and

e.    Whether Plaintiffs and the Class are entitled to money damages under the same causes of action as the other Class Members.

69.    <u>Typicality</u>: Plaintiffs are members of the Class and their respective Subclasses. Plaintiffs' claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendant's Products. Plaintiffs are entitled to relief under the same causes of action as the other Class Members.

70.    <u>Adequacy</u>: Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the Class Members they seek to represent, their consumer fraud claims are common to all members of the Class, they have a strong interest in vindicating their rights, they have retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

71.    <u>Predominance</u>: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class and Subclasses. The Class issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and

misleading marketing and labeling practices.

72.    <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.    The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.    The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c.    When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.    This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.    Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude their maintenance as a class action;

f.    This class action will assure uniformity of decisions among Class Members;

g.    The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.    Class Members' interests in individually controlling the prosecution of

21

separate actions is outweighed by their interest in efficient resolution by a single class action; and

i.   It would be desirable to concentrate in this single venue the litigation of all Class Members who were induced by Defendant's uniform false advertising to purchase its Products.

73.   Accordingly, this Class Action lawsuit is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CLAIMS

### FIRST CAUSE OF ACTION
**Violation of New York GBL § 349**
**(On Behalf of Plaintiffs and Nationwide Class)**

74.   Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

75.   New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . . ."

76.   The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiffs and other Class Members seek monetary damages against Defendant, enjoining them from inaccurately describing, labeling, marketing, and promoting the Products.

77.   There is no adequate remedy at law.

78.   Defendant misleadingly, inaccurately, and deceptively advertises and markets its

21

Products to consumers.

79.     Defendant's improper consumer-oriented conduct—including failing to disclose that the Products have, or had the risk of having, *Clostridium botulinum* —is misleading in a material way in that it, *inter alia*, induced Plaintiffs and other Class Members to purchase Defendant's Products and to use the Products when they otherwise would not have. Defendant made the untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

80.     Plaintiffs and other Class Members have been injured because they purchased Products that were mislabeled, unhealthy, and entirely worthless. Accordingly, Plaintiffs and the Class Members received less than what they bargained and paid for.

81.     Defendant's advertising and Products' packaging and labeling induced Plaintiffs and other Class Members to buy Defendant's Products.

82.     Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiffs and other Class Members have been damaged thereby.

83.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiffs and other Class Members are entitled to monetary, statutory, compensatory, treble and punitive damages, interest, and attorneys' fees and costs.

### SECOND CAUSE OF ACTION
### Violation of New York GBL § 350
### (On Behalf of Plaintiffs and the Nationwide Class)

84.     Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

85.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

86.     N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

87.     Defendant's labeling and advertisements contain untrue and materially misleading statements and omissions concerning its Products because it misrepresents that the Products are safe for use and doesn't list that the Products contain infant botulism.

88.     Plaintiffs and the other Class Members have been injured because they saw the labeling, packaging, and advertising and purchased Products that were mislabeled, unhealthy, and entirely worthless. Accordingly, Plaintiffs and other Class Members received less than what they bargained and paid for.

89.     Defendant's advertising, packaging, and Products' labeling induced Plaintiffs and other Class Members to buy Defendant's Products.

90.     Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

91.     Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

92.     Defendant made the material misrepresentations described in this Complaint in its

advertising and on the Products' packaging and labeling.

93.     Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

94.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiffs and other Class Members are entitled to monetary, statutory, compensatory, treble and punitive damages, interest, and attorneys' fees and costs.

### THIRD CAUSE OF ACTION
**Negligence**
**(On Behalf of Plaintiffs and the Nationwide Class)**

95.     Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

96.     The conduct of Defendant in manufacturing, distributing, and selling the Products with the contamination of infant botulism constituted negligence in failing to reasonably act in accordance with all applicable standards of care. Defendant owed Plaintiffs and Class members a duty not to disseminate a materially defective product. Defendant breached said duty of care when it nevertheless manufactured, distributed, and sold the Products with the contamination of *Clostridium botulinum* to consumers, including Plaintiffs.

97.     Defendant also breached its duty of care by negligently failing to timely and/or adequately warn Plaintiffs and the Class of the contamination of infant botulism, even after Defendant was, or should have been, fully aware of the manufacturing defect in the Products.

98.     As a direct and proximate result of Defendant's negligence, Plaintiffs and Class Members suffered economic injury, entitling them to just compensation, as detailed below.

## FOURTH CAUSE OF ACTION
### Unjust Enrichment
### (On Behalf of Plaintiffs and the Nationwide Class)

99.     Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

100.    Defendant was unjustly enriched at the expense of Plaintiffs and other Class Members in the form of monies that Plaintiffs and other Class Members paid for the Products.

101.    Plaintiffs and Class Members seek restitution and disgorgement of such inequitably obtained monies.

## FIFTH CAUSE OF ACTION
### Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA")
### (Fla. Stat. §§ 501.201, *et seq.*)
### (On Behalf of Plaintiff Martinez and the Florida Subclass)

102.    Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

103.    Section 501.204(1) of the FDUTPA declares that "unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

104.    "Trade or commerce" means the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." Section 501.203(8).

105.    The provisions of FDUTPA shall be "construed liberally" to promote and "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair acts or practices in the conduct of any trade or commerce." *See* Section 501.202.

21

106.     Defendant's conduct as described herein is in violation of Section 501.204(1) of the FDUTPA in that Cake engaged in unfair and deceptive acts and practices by advertising, soliciting, providing, offering, and distributing the Products as suitable for infants, when in fact that is false because the Products contain *Clostridium botulinum*.

107.     Defendant deceptively and misleadingly conceals and misrepresents material facts about the Products, including: (a) the true nature of the Products' ingredients; and (b) that the Products contain *Clostridium botulinum*.

108.     Plaintiff Martinez and the Florida Subclass seek all relief available under the FDUTPA.

### SIXTH CAUSE OF ACTION
### The California Unfair Competition Law
**(California Business & Professions Code §§17200, *et seq*.)**
**(on Behalf of Plaintiff Pilato and the California Subclass)**

109.     Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

110.     The Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code §17200.

111.     Plaintiff, the California Subclass members, and Defendant are each a "person" under California Business & Professions Code §17201.

**Fraudulent**

112.     Defendant's failure to disclose the presence (or material risk of presence) of *Clostridium botulinum* in the Products is likely to deceive the public.

**Unlawful**

113.     As alleged herein, Defendant's failure to disclose the presence (or material risk of

21

presence) of *Clostridium botulinum* in the Products violates at least the following laws:

- The CLRA, California Business & Professions Code §§1750, *et seq.*;

- The False Advertising Law, California Business & Professions Code §§17500, *et seq.*, and

- The Sherman Food, Drug, and Cosmetic Law, California Health & Safety Code §§109875, *et seq.*

**Unfair**

114. Defendant committed unfair practices by selling the Products without adequate testing or screening for the *Clostridium botulinum*, which rendered the Products adulterated and misbranded.

115. Defendant's conduct with respect to the packaging and sale of the Products is unfair because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers, and the utility of Defendant's conduct, if any, does not outweigh the gravity of the harm to their victims.

116. Defendant's conduct with respect to the packaging and sale of the Products is also unfair because it violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including, but not limited to, the False Advertising Law.

117. Defendant's conduct with respect to the packaging and sale of the Products is also unfair because the consumer injury is substantial, not outweighed by benefits to consumers or competition, and not one that consumers, themselves, can reasonably avoid.

118. Defendant was obligated to disclose the presence of *Clostridium botulinum* in the Products because:

a.    Defendant had exclusive knowledge of the presence of *Clostridium botulinum* in the Products that was not known or reasonably accessible to Plaintiff and the California Subclass; and

b.    Defendant actively concealed the presence of *Clostridium botulinum* from Plaintiff and the California Subclass.

119.    Plaintiff and the California Subclass members relied upon the Products' packaging provided to them by Defendant when making their purchasing decisions.  Had Plaintiff and the Class members known Defendant failed to disclose the presence of *Clostridium botulinum* on the Products' packaging, they would not have purchased the Products.

120.    In accordance with California Business & Professions Code §17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign.

121.    Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiff's desire to purchase the Products in the future if she can be assured that the Products are safe for consumption and do not contain *Clostridium botulinum*.

122.    On behalf of herself and the California Subclass, Plaintiff also seeks an order for the restitution of all monies from the sale of the Products, which was unjustly acquired through acts of fraudulent, unfair, or unlawful competition.

123.    Plaintiff and California Subclass Members seek restitution if monetary damages are not available. Indeed, restitution under the Unfair Competition Law can be awarded in situations where the entitlement to damages may prove difficult. But even if damages were available, such relief would not be adequate to address the injury suffered by Plaintiff and California Subclass

Members. Unlike damages, the Court's discretion in fashioning equitable relief is very broad. Thus, restitution would allow recovery even when normal consideration associated with damages would not.

**SEVENTH CAUSE OF ACTION**
**The California False Advertising Law**
**(California Business & Professions Code**
**§§17500, *et seq.*)**
**(on Behalf of Plaintiff Pilato and the California**
**Subclass)**

124.     Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

125.     California's False Advertising Law prohibits any statement or omission in connection with the sale of goods "which is untrue or misleading." Cal. Bus. & Prof. Code §17500.

126.     As set forth herein, Defendant's failure to disclose the presence (or risk of presence) of *Clostridium botulinum* in the Products is likely to deceive the public.

127.     Defendant knew the Products contained undisclosed levels of *Clostridium botulinum*.  Defendant had a duty to disclose the presence of *Clostridium botulinum*, and by omitting its presence, misled consumers.

128.     Defendant knew, or reasonably should have known, that these Omissions and Misrepresentation were misleading to reasonable consumers.

129.     Had Defendant disclosed the presence (or risk of presence) of *Clostridium botulinum* in the Products or made consumers aware of their failure to disclose, Plaintiff and members of the California Subclass would not have purchased the Products.

130.     Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiff's desire to purchase the Product in the future if she can be assured that the Products does not contain *Clostridium botulinum*.

21

131.     Plaintiff and the members of the California Subclass are entitled to injunctive and equitable relief, and restitution in the amount they spent on the Products.

132.     Plaintiff and California Subclass Members seek restitution if monetary damages are not available. Indeed, restitution under the California False Advertising Law can be awarded in situations where the entitlement to damages may prove difficult. But even if damages were available, such relief would not be adequate to address the injury suffered by Plaintiff and California Subclass Members. Unlike damages, the Court's discretion in fashioning equitable relief is very broad. Thus, restitution would allow recovery even when normal consideration associated with damages would not.

### EIGHTH CAUSE OF ACTION
### The California Consumer Legal Remedies Act
#### (California Civil Code §§1750, *et seq.*)
#### (on Behalf of Plaintiff Pilato and the
#### California Subclass)

133.     Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

134.     Plaintiff and the proposed Subclass Members are "consumers," as that term is defined in California Civil Code §1761(d).

135.     The Product is a "good," as that term is defined in California Civil Code §1761(a).

136.     Plaintiff, the California Subclass Members, and Defendant are each "persons" as that term is defined in California Civil Code §1761(c).

137.     Plaintiff's and each California Subclass Member's purchases of the Product constitute "transactions" as that term is defined in California Civil Code §1761(c).

138.     Defendant's conduct alleged herein violates at least the following provisions of California's Consumers Legal Remedies Act (the "CLRA"):

a.  California Civil Code §1770(a)(5), by failing to make any mention of *Clostridium botulinum* in the Product;

b.  California Civil Code §1770(a)(7), by knowingly, recklessly, and/or intentionally representing that the Product was of a particular standard, quality, or grade, when they were of another; and

c.  California Civil Code §1770(a)(9), by knowingly, recklessly, and/or intentionally advertising the Product with intent not to sell it as advertised.

139.  The Omissions and Misrepresentation were material as reasonable consumers including Plaintiff and California Subclass Members would deem the presence of *Clostridium botulinum* important in determining whether to purchase the Products.

140.  Defendant was obligated to disclose the presence of *Clostridium botulinum* in the Products because:

a.  Defendant had exclusive knowledge of the presence of *Clostridium botulinum* in the Products, which was not known or reasonably accessible to Plaintiff or California Subclass Members; and

b.  Defendant actively concealed the presence of *Clostridium botulinum* from Plaintiff and California Subclass Members.

141.  As a direct and proximate result of these violations, Plaintiff and California Subclass Members have been harmed, and such harm will continue unless and until Defendant is enjoined from using the misleading marketing described herein in any manner in connection with the advertising and sale of the Product.

142.  Contemporaneously with this complaint, counsel for Plaintiff and California Subclass members sent written notice (via U.S. certified mail, return receipt requested) that its

21

conduct is in violation of the CLRA. If Defendant fails to provide appropriate relief for its violations of the CLRA §§1770(a)(5), (7), and (9), within thirty days of receipt of Plaintiff's notification, Plaintiff will amend this Complaint to seek all available damages under CLRA §1780.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all issues.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiffs as the representative of the Class and New York Subclass under Rule 23 of the FRCP, Plaintiff Pilato as representative of the California Subclass, Plaintiff Martinez as representative of the Florida Subclass, and naming Plaintiffs' attorneys as Class Counsel to represent the Class and Subclass members;

(b) Declaring that Defendant is financially responsible for notifying Class Members of the pendency of this suit;

(c) Awarding compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(d) Ordering Defendant to pay pre-judgment interest on all amounts awarded;

(e) Awarding Plaintiffs and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiffs' attorneys, experts, and reimbursement of Plaintiffs' expenses; and

(f) Granting such other and further relief as the Court may deem just and proper.

Dated: November 14, 2025

Respectfully submitted,

**SULTZER & LIPARI, PLLC**

By:      /s/ Jason P. Sultzer
Jason P. Sultzer, Esq.
Daniel Markowitz, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
markowitzd@thesultzerlawgroup.com

Russell M. Busch
**BRYSON HARRIS SUCIU**
**& DEMAY PLLC**
11 Park Place, 3rd Floor
New York, NY 10007
Tel: (919) 926-7948
rbusch@brysonpllc.com

Nick Suciu III*
**BRYSON HARRIS SUCIU**
**& DEMAY PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel: (616) 678-3180
nsuciu@brysonpllc.com

Brittany S. Scott*
**SMITH KRIVOSHEY, PC**
28 Geary Str Ste. 650 No. 1507
San Francisco, CA 94108
Telephone: 415-839-7077
Facsimile: 888-410-0415
E-Mail: brittany@skclassactions.com

*Counsel for Plaintiffs and the Class*

*\*Pro hac vice forthcoming*

### CLRA Venue Declaration Pursuant To Cal. Civ. Code § 1780(d)

I, Jason P. Sultzer, declare as follows:

1.      I am an attorney at law licensed to practice in the State of New York and I am admitted to the bar of this Court. I am a partner at Sultzer & Lipari, PLLC, counsel of record for Plaintiffs in this action.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.      The Complaint filed in this action is filed in the proper place for trial under Cal. Civ. Code § 1780(d) in that Defendant maintains its principal place of business in this District.

I declare under the penalty of perjury under the laws of the State of New York that the foregoing is true and correct and that this declaration was executed at 85 Civic Center Plaza, Suite 200, Poughkeepsie, NY 12601, this 14th day of November, 2025.


*/s/ Jason P. Sultzer*
Jason P. Sultzer